UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

HASSON WILSON,

                Plaintiff,

   v.

SNYDER, et al.,                                     No. 9:19-CV-420
                                                            (DNH/CFH)

                Defendants.

_____

**APPEARANCES:**                                       **OF COUNSEL:**

Hasson Wilson
18-A-1132
Great Meadow Correctional Facility
Box 51
Comstock, New York 12821
Plaintiff pro se

Attorney General for the                       RICHARD C. WHITE, ESQ.
   State of New York                                  Assistant Attorney General
The Capitol
Albany, New York 12224
Attorney for Defendants

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Plaintiff pro se Hasson Wilson ("Plaintiff"), an inmate who was, at all relevant times, in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that

---

[1] This matter was referred to the undersigned for Report-Recommendation and Order pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

1

defendant[2] Snyder ("Defendant"), Deputy of Security at Marcy Correctional Facility ("Marcy")—who, at all relevant times, was employed at Marcy—violated his constitutional rights under the Eighth Amendment.  See Dkt. No. 1 ("Compl.").[3] Presently pending before the Court is defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  See Dkt. No. 18.  Plaintiff did not file a response.  For the reasons that follow, it is recommended that defendant's motion be granted.

## I. Background
### A. Plaintiff's Complaint and Exhibits

Plaintiff was transferred to Marcy on September 25, 2018.  See Compl. at 5. Following his arrival, he asked a correctional officer ("C.O.") whether members of the Crips gang lived at Marcy and informed the C.O. that he had previously been a member of that gang when he resided at Rikers Island.  See id.  According to plaintiff, the C.O. stated that plaintiff would "definitely have problems [at Marcy because] Bloods is cutting your kind."  Id.

---

[2] Plaintiff's complaint originally named three defendants in this action: Snyder, John Doe #1, and John Doe #2.  See Dkt. No. 1 ("Compl.") at 2-3.  In response to plaintiff's June 2019 letter motion requesting to withdraw all claims against John Doe #1 and John Doe #2, the Court dismissed all claims asserted against those defendants without prejudice and ordered the Clerk of the Court to terminate them from the action.  See Dkt. Nos. 13, 17.  As the only defendant remaining in the action is Snyder, the Clerk of the Court is respectfully directed to modify the caption accordingly.

[3] Following initial review of plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2)(B), District Judge David N. Hurd dismissed plaintiff's Fourteenth Amendment Equal Protection claims without prejudice for failure to state a claim upon which relief may be granted.  See Dkt. No. 7 at 10.  The only claim remaining in the action is plaintiff's Eighth Amendment failure-to-protect claim against Snyder.  See id.

On September 26, 2018, plaintiff attended a facility orientation where defendant spoke. See id. Later that day, plaintiff wrote defendant a letter in which he explained that he heard that someone was going to cut him in the main yard because of his past affiliation with the Crips gang and requested to be placed in protective custody. See Dkt. No. 1-1 at 1; see also Compl. at 6. On September 30, 2018, plaintiff wrote letters to the superintendent of Marcy and defendant in which he stated that he had heard rumors that someone from the Bloods gang was going to cut him and asked to be placed in protective custody. See Dkt. No. 1-1 at 2, 3; see also Compl. at 6. At 3:15 P.M. on October 3, 2018, plaintiff was "cut from behind by an inmate that couldn't be identified" while in the yard. Compl. at 6. On April 4, 2019, plaintiff submitted a letter addressed to the "Grievance Central Office" that stated, "I am informing you that I filed a grievance alleging the facts of my claim on Oct[.] 3, 2019 incident but I was denied because I was too late, but I am filing with a higher agency affiliated with DOCCS." Dkt. No. 1-1 at 8. Plaintiff filed his present section 1983 lawsuit on April 8, 2019. See Compl. at 1.

## B. Defendant's Motion for Summary Judgment[4]

Defendant contends that plaintiff's complaint should be dismissed in its entirety for failure to exhaust administrative remedies because he did not file a grievance

---

[4] In support of this motion, defendant filed a Statement of Material Facts in compliance with N.D.N.Y.L.R. 7.1(a)(3), which provides, in relevant part, "[a]ny facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party." See Dkt. No. 18-5. Defendant specifically advised plaintiff of the consequences of failing to respond to the motion. See Dkt. No. 18 at 3. Plaintiff did not file a response despite being afforded a time extension. See Dkt. No. 23. Therefore, notwithstanding plaintiff's pro se status, the Court will "follow the practice of enforcing [N.D.N.Y.]L.R. 7.1(a)(3) and accept the facts set forth in [d]efendant['s] Material Statement of Facts as uncontroverted to the extent those facts are supported by record evidence." Richard v. LeClaire, 9:15-CV-00006 (BKS/TWD), 2019 WL 5197041, at *4 (N.D.N.Y. May 6, 2019).

concerning the conduct in his complaint despite the Inmate Grievance Program ("IGP") being available to him. See Dkt. No. 18; see also Dkt. No. 18-1 at 7-9. In support of his motion, defendant submitted the sworn declaration of Erin Pfendler ("Pfendler"), the IGP Supervisor at Marcy, who stated that "[p]laintiff's claims in this action are the proper subject for a grievance under the IGP," but "[u]pon review of the records maintained in the grievance office at Marcy, [p]laintif did not file any grievances related to his claims in this case." Dkt. No. 18-2 at 4 ¶¶ 13, 14. Pfendler explained that "there is an orientation program offered at Marcy that includes a presentation on the grievance policies and procedures set forth in [DOCCS] Directive # 4040" and that "[p]laintiff's Inmate Program Assignment history[] demonstrate[es] that [he] attended and successfully completed this orientation program on October 1, 2018 to October 7, 2018." Id. at 2 ¶ 4.

Further, defendant submitted the sworn declaration of Sally Reams ("Reams"), the IGP Supervisor at Fishkill Correctional Facility ("Fishkill"). See Dkt. No. 18-3 at 1 ¶ 1. Reams stated that plaintiff was "transferred from Marcy . . . to Fishkill on or about October 18, 2018." Id. at 3 ¶ 10. Based on her "review of the records maintained in the grievance office at Fishkill, [p]laintiff did not file any grievances related to his claims in this case." Id. at 4 ¶ 14. In addition, defendant included the sworn declaration of Rachael Seguin ("Seguin"), the Assistant Director of the IGP for DOCCS. See Dkt. No. 18-4 at 2 ¶ 3. Seguin explained that, in her position as Assistant Director, she is "a custodian of the records maintained by the Central Office Review Committee ("CORC"), . . . the body that renders the final administrative decision under DOCCS's [IGP] pursuant to 7 N.Y.C.R.R. § 701 et seq." Id. Seguin further declared that, "[u]pon review of the records maintained in the regular course of business by DOCCS, [p]laintiff did not

4

appeal any grievance to CORC regarding his claims in this action." Id. at 3 ¶ 10. Moreover, concerning plaintiff's purported April 4, 2018 letter to CORC, Seguin stated that "[a] review of DOCCS records reveals that no such letter [was] received by CORC." Id. at ¶ 11.

## II. Discussion[5]

### A. Legal Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment may be granted only if all the submissions taken together "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the burden of showing the absence of a genuine dispute of material fact by providing the Court with portions of "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which support the motion. Celotex, 477 U.S. at 322; see FED. R. CIV. P. 56(c). A fact is material if it "might affect the outcome of the suit," as determined by the governing substantive law; a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

If the moving party meets this burden, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." Id. at 248, 250; see Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009). "When ruling on a summary judgment motion,

---

[5] All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

5

the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). Still, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), and cannot rely on "mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986) (citing Quarles v. Gen. Motors Corp. (Motors Holding Div.), 758 F.2d 839, 840 (2d Cir. 1985) (per curium)). Furthermore, "mere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (brackets omitted) (quoting Fletcher v. Atex, Inc., 68 F.3d 1451, 1456 (2d Cir. 1995)).

Where, as here, a party seeks judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Treistman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to special solicitude, that a *pro se* litigant's submissions must be construed liberally, and that such submissions must be read to raise the strongest arguments that they suggest. At the same time, our cases have also indicated that we cannot read into *pro se* submissions claims that are not consistent with the *pro se* litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by *pro se* litigants, and that *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law . . . .

6

Id. (internal quotation marks, citations, and footnote omitted); see also Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that when [a] plaintiff proceeds *pro se*, . . . a court is obligated to construe his pleadings liberally." (internal quotation marks and citations omitted)).

### B. Exhaustion

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust any administrative remedies available to him or her before bringing an action for claims arising out of his or her incarceration. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The exhaustion requirement applies "'to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.'" Cucchiara v. Dumont, No. 9:18-CV-0182 (GLS/CFH), 2019 WL 2516605, at *4 (N.D.N.Y. Apr. 26, 2019) (quoting Porter v. Nussle, 534 U.S. 516, 532 (2002)). Further, the exhaustion requirement applies even where the prisoner seeks relief not available in the administrative grievance process, such as money damages. See Porter, 534 U.S. at 524. "To exhaust administrative remedies, the inmate must complete the full administrative review process set forth in the rules applicable to the correctional facility in which he or she is incarcerated." Cuadrado v. Brueault, No. 9:14-CV-1293

7

(DNH/CFH), 2015 WL 1606178, at *3 (N.D.N.Y. Apr. 8, 2015); see Jones v. Bock, 549 U.S. 199, 218 (2007).

While the Supreme Court has deemed exhaustion mandatory, the Second Circuit has recognized that "certain caveats apply." Ruggiero v. County of Orange, 467 F.3d 170, 175 (2d Cir. 2006) (internal quotation marks and citation omitted). Until recently, courts in this District followed a three-part test established by the Second Circuit in Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). Under the test established in Hemphill, a plaintiff's failure to exhaust could be excused if a plaintiff established that his or her failure to exhaust was justified by "special circumstances." Id. However, in Ross v. Blake, the Supreme Court held that "[c]ourts may not engraft an unwritten 'special circumstances' exception onto the PLRA's exhaustion requirement." Ross v. Blake, ––– U.S. –––, 136 S. Ct. 1850, 1862 (2016). Thus, the special circumstances exception previously promulgated by the Second Circuit in Hemphill is no longer consistent with the statutory requirements of the PLRA. See Williams v. Correction Officer Priatno, 829 F.3d 118, 123 (2d Cir. 2016).

However, courts must still consider the PLRA's "textual exception to mandatory exhaustion." Ross, ––– U.S. –––, 136 S. Ct. at 1858. Under this exception, courts must determine whether administrative remedies were "available" to a prisoner. Id. The Supreme Court identified three circumstances where administrative remedies may be unavailable to a prisoner. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id. at 1859 (citing Booth v. Churner, 532 U.S. 731, 736, 738

8

(2001)). "Next, an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." Id. Lastly, administrative remedies are unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1860.

There is no genuine dispute that, at all relevant times, DOCCS had in place a well-established three-step administrative procedure for inmate grievances known as the IGP. See Dkt. No. 18-1 at 6-7; see also N.Y. COMP. CODES R. & REGS. (7 N.Y.C.R.R.) § 701.5. First, the inmate must file a complaint with an IGP clerk within 21 calendar days of the alleged incident. See 7 N.Y.C.R.R. § 701.5(a)(1). An IGP representative has 16 calendar days to informally resolve the issue. See id. at § 701.5(b)(1). If no informal resolution occurs, the Inmate Grievance Review Committee ("IGRC") must hold a hearing within 16 calendar days of receipt of the grievance and must issue a written decision within two working days after the conclusion of the hearing. See id. at § 701.5(b)(2)(i)-(ii). If the determination is unfavorable to the inmate, the inmate may appeal the IGRC's determination to the facility superintendent within seven calendar days of receipt of the determination. See id. at § 701.5(c)(1). If the superintendent's determination is unfavorable to the inmate, the inmate may appeal to CORC within seven calendar days after receipt of the superintendent's determination. See id. at § 701.5(d)(1)(i). CORC must "review each appeal, render a decision on the grievance, and transmit its decision to the facility, with reasons stated, for the [inmate], the grievance clerk, the superintendent, and any direct parties within thirty 30 calendar days from the time the appeal was received." Id. at § 701.5(d)(3)(ii).

"Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court." Murray v. Goord, 668 F. Supp. 2d 344, 355-56 (N.D.N.Y. 2009). On a motion for summary judgment, "[t]he defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action." McMillian v. Walters, No. 9:16-CV-0277 (MAD/DJS), 2017 WL 8894737, at *2 (N.D.N.Y. Dec. 18, 2017), report and recommendation adopted, No. 9:16-CV-277 (MAD/DJS), 2018 WL 879270 (N.D.N.Y. Feb. 14, 2018).

### 1. Plaintiff Failed to Exhaust his Administrative Remedies

Defendant has met his burden of establishing that no genuine issue of material fact exists concerning plaintiff's failure to exhaust his administrative remedies with respect to the claims asserted in this action. The sworn declarations of Pfendler and Reams make clear that neither Marcy nor Fishkill have any record of plaintiff filing a grievance relating to the claims in this action. See Dkt. No. 18-2 at 4 ¶ 14; Dkt. No. 18-3 at 4 ¶ 14. In addition, Seguin's sworn declaration establishes that DOCCS has no record of plaintiff filing an appeal of any grievance with CORC regarding his claims in this action. See Dkt. No. 18-4 at 3 ¶ 10. Thus, defendant has established that plaintiff never filed a grievance concerning his present claims and, therefore, did not even commence the available administrative review process.

Nothing in the record controverts defendant's exhaustion evidence. Plaintiff's purported April 4, 2019 letter in which he states that he was appealing an untimely

10

October 3, 2019 grievance to CORC fails to establish the existence of a material issue of fact. See Dkt. No. 1-1 at 8. Even assuming arguendo that plaintiff did send his April 4, 2019 letter to CORC, this informal letter does not satisfy the mandatory exhaustion requirement. See Rawls v. Rosenfeld, No. 9:16-CV-0582 (LEK/CFH), 2017 WL 7050648, at *7 (N.D.N.Y. Nov. 28, 2017) (holding that the plaintiff's informal letters to the superintendent and CORC did not satisfy the exhaustion requirement, as "[i]t is well-established in the Second Circuit that any informal resolution or relief outside of the administrative procedures does not satisfy exhaustion requirements."). Moreover, plaintiff's purported attempt at appealing an untimely grievance directly to CORC on April 4, 2019, cannot establish that he exhausted administrative remedies, as it omits the intermediate step in the DOCCS administrative review process of appealing a grievance to the superintendent. See 7 N.Y.C.R.R. § 701.5(c)(1); see also Smith v. Kelly, 985 F. Supp. 2d 275, 290 (N.D.N.Y. 2013) ("It would eviscerate the exhaustion requirement to deem an inmate to have exhausted his available administrative remedies where he files a grievance . . . late . . . , then skips the superintendent and appeals the rejection of his grievance (based on untimeliness) to CORC.").

Additionally, plaintiff's purported April 4, 2019 letter was submitted only four days prior to the filing of his present section 1983 lawsuit—well before the 30-day time period for CORC to issue a decision—and plaintiff has not proffered any evidence indicating that CORC ever considered any administrative appeal arising out of his claims in this action. See, e.g., Mayandeunas v. Bigelow, No. 9:18-CV-1161 (GTS/TWD), 2019 WL 5273527, at *6 (N.D.N.Y. May 21, 2019) (holding that the defendants satisfied their burden of demonstrating that the plaintiff failed to exhaust administrative remedies

where the documentary evidence established that, at the time the plaintiff commenced his section 1983 action, his administrative appeal was pending before CORC and no evidence indicated that CORC had addressed his grievance), report and recommendation adopted, No. 9:18-CV-1161 (GTS/TWD), 2019 WL 3955484 (N.D.N.Y. Aug. 22, 2019). In any event, as Seguin indicated in her sworn declaration, DOCCS has no record of CORC receiving such letter. See Dkt. No. 18-4 at 3 ¶ 11.

Furthermore, no exception to the mandatory exhaustion requirement applies here. As Pfendler indicated, plaintiff was aware that the grievance procedure was available to him based on his attendance and completion of the Marcy orientation program and nothing in the record indicates otherwise. See Dkt. No. 18-2 at 2 ¶ 4. Based on the foregoing, it is recommended that defendant's motion for summary judgment be granted on the ground that plaintiff has failed to exhaust administrative remedies and has not shown that those remedies were unavailable to him.

Where a claim is dismissed for failure to exhaust administrative remedies, dismissal without prejudice is appropriate if the time permitted for pursuing administrative remedies has not expired. See Berry v. Kerik, 366 F.3d 85, 87-88 (2d Cir. 2004). However, if a prisoner has failed to exhaust available administrative remedies and the time in which to exhaust has expired, it is proper for the court to dismiss the complaint with prejudice because any attempt to exhaust would be futile. See id. at 88; see also Richard v. LeClaire, No. 9:15-CV-00006 (BKS/TWD), 2019 WL 5197041, at *9 (N.D.N.Y. May 6, 2019) ("Because [the p]laintiff's failure to exhaust is at this point incurable, the Court recommends that summary judgment for failure to exhaust administrative remedies be with prejudice."). Here, the time for plaintiff to

exhaust administrative remedies with respect to the alleged October 3, 2018 incident against Snyder has long since expired.  Accordingly, it is recommended that plaintiff's complaint be dismissed in its entirety with prejudice.

### III. Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that defendant's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Dkt. No. 18) be **GRANTED WITH PREJUDICE** on the ground that plaintiff failed to exhaust administrative remedies; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED IN ITS ENTIRETY**; and it is hereby

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 6(a), 6(e), 72.[6]

---

[6] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last

13

Dated: December 5, 2019
Albany, New York

*[signature: Christian F. Hummel]*

Christian F. Hummel
U.S. Magistrate Judge

---

day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).